**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SYNERGEIA HEALTH, INC. individually and derivatively as the sole member of SANKAV PHARMACEUTICALS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SANJEEV K. GUPTA and TUSHAR GUPTA, <br><br> Defendants. | Civil Action No. <br><br> 26-2315 (SDW) (LDW) <br><br><br> **REPORT AND RECOMMENDATION** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

This matter comes before the Court by way of plaintiff Synergeia Health, Inc.'s Motion to Remand this matter to the Superior Court of New Jersey, Morris County and for an award of fees and costs. (ECF 3, 9). Defendants Sanjeev K. Gupta ("Sanjeev") and Tushar Gupta ("Tushar") oppose the motion. (ECF 8). The Court heard oral argument on the motion on April 9, 2026. Having considered the parties' written submissions and argument, it is respectfully recommended that the Motion to Remand be **GRANTED** and plaintiff be awarded attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c).

## I. BACKGROUND

Plaintiff initiated this action in the Superior Court of New Jersey, Morris County on February 11, 2026, alleging as follows. (Complaint, ECF 1-2). Sanjeev is the founder and owner of SanKav, a pre-revenue entity intended to produce pharmaceutical products. (*Id.* ¶ 5). Sanjeev solicited an investment from Synergeia for the purpose of turning SanKav into a 503B outsourcing facility – *i.e.*, a pharmaceutical compounding facility regulated under Section 503B of the Federal

Food, Drug, and Cosmetic Act. (*Id.* ¶¶ 6-10, 23). Synergeia acquired 100% of SanKav in 2024 and over the subsequent fourteen months invested approximately $8.5 million in SanKav for the 503B outsourcing facility. (*Id.* ¶¶ 22-28). Pursuant to a December 4, 2024 Executive Employment Agreement, Sanjeev was appointed the Chief Executive Officer and Chief Scientific Officer of SanKav and the President and Chief Scientific Officer of Synergeia. (*Id.* ¶¶ 29-30). Sanjeev was also appointed to the Board of Directors of Synergeia. (*Id.* ¶ 33). Tushar, Sanjeev's son, likewise signed an Executive Employment Agreement and was appointed the Chief Operating Officer of Synergeia. (*Id.* ¶¶ 29, 31).

Plaintiff acknowledges that it allowed defendants a "substantial amount of autonomy" in using the $8.5 million capital contribution to create a 503B outsourcing facility. (*Id.* ¶ 11). However, plaintiff alleges that defendants abused this autonomy and, "[d]espite repeated and escalating requests from the Board of Directors and Synergeia management, Defendant Sanjeev consistently refused to provide transparency, obstructed corporate governance, blocked audits, concealed financial and operational information, engaged conflicted parties, and disclosed confidential and proprietary information to unauthorized individuals." (*Id.* ¶ 36). Plaintiff further alleges that Tushar improperly diverted SanKav's business to VariTec, a company he himself owns, without disclosing the conflict to Synergeia's Board. (*Id.* ¶¶ 138-39).

On January 12, 2026, Synergeia's Board of Directors convened to discuss their concerns about Sanjeev's lack of transparency. (*Id.* ¶ 90). Plaintiff alleges that Sanjeev rebuffed the Board's request that he provide information about SanKav's operations and access to SanKav's systems, claiming that the Board members were "outsiders" not permitted to review SanKav's confidential and proprietary information. (*Id.* ¶¶ 92-94, 104, 111-12). Sanjeev also objected to a third-party audit of SanKav's operations and finances. (*Id.* ¶¶ 99-101). The Board of Directors met again on

2

January 30, 2026 without Sanjeev and voted to remove him from the Board and terminate his employment with Synergeia and SanKav.  (*Id.* ¶¶ 114-16).

Following Sanjeev's termination, the Board discovered that Sanjeev did not design the SanKav facility to the required specifications for a 503B outsourcing facility but instead misused its investment to create a facility suited to research and development.  (*Id.* ¶¶ 15, 117).  Moreover, plaintiff alleges that in response to his termination, Sanjeev:  (1) orchestrated a walk-out such that none of SanKav's employees have reported to work since February 2, 2026 (*id.* ¶¶ 119, 128); (2) locked Synergeia's representatives out of SanKav's accounts, including its payroll account at ADP (*id.* ¶¶ 122-23); (3) caused vendors to stop doing business with SanKav (*id.* ¶ 122); and (4) embezzled $7,500 in cash from a SanKav bank account (*id.* ¶ 126).  Plaintiff further alleges that Tushar has abandoned his duties as Chief Operating Officer and has stopped reporting to work since his father's termination.  (*Id.* ¶ 140).

Plaintiff filed a Verified Complaint and Order to Show Cause against Sanjeev and Tushar in state court on February 11, 2026, asserting claims for breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, conversion, access to books and records, and an accounting.  Defendants answered the complaint on February 12, 2026, asserting a number of counterclaims against Synergeia and its Board members.  Relevant to the instant motion, Sanjeev alleges that in 2021 – years prior to the events recounted in plaintiff's complaint – SanKav acquired the real property housing the manufacturing facility at issue with financing from a Small Business Administration ("SBA") loan. (Counterclaims ¶¶ 14-15, ECF 1-3).  In December 2023, SanKav defaulted on the loan; in an effort to avoid foreclosure, Sanjeev sought funding from new investors.  (*Id.* ¶ 18).  On November 12, 2024, Sanjeev on behalf of SanKav and Synergeia executed several Funding Agreements whereby Synergeia acquired 100%

of SanKav and agreed to make an initial capital contribution of $16 million to SanKav. (*Id.* ¶¶ 26-48).  Sanjeev alleges that the Funding Agreements were contingent on, among other things, lender approval for any ownership restructuring or asset transfer to Synergeia pursuant to the terms of the SBA loan, which was never obtained.  (*Id.* ¶¶ 26-35).  Accordingly, Sanjeev seeks a declaratory judgment that the Funding Agreements are void and his ownership interest in SanKav never transferred to Synergeia.  (*Id.* ¶¶ 87-93).

On February 12, 2026, the Honorable James M. DeMarzo, P.J. Ch. entered an Order to Show Cause with Temporary Restraints prohibiting defendants from interfering with SanKav and Synergeia's business.  (ECF 3-5).   The parties appeared before Judge DeMarzo on February 17, 2026 for oral argument on plaintiff's Order to Show Cause.  Following argument, Judge DeMarzo entered an Order dated February 17, 2026 preliminarily enjoining Sanjeev from (1) interfering with SanKav and Synergeia's business, (2) advising vendors not to do business with Synergeia or SanKav or to remove or limit Synergeia or SanKav's access to vendors' services, (3) making false statements to vendors, (4) representing himself as an officer, director, or employee of Synergeia or SanKav, (5) withholding data or information from Synergeia's Board, and (6) making withdrawals from the companies' bank accounts or incurring further debts in the companies' names.  (Order, ECF 1-4).  Judge DeMarzo further ordered Sanjeev to retract an email he sent to one of SanKav's vendors claiming that Synergeia and SanKav had sustained a data breach so they should not deal with SanKav's management.  (*Id.*).  The Order preliminarily enjoined Tushar from withholding data or information from Synergeia's Board.  (*Id.*).  The same day, Judge DeMarzo denied defendants' application to vacate the temporary restraints entered against them.  (ECF 1-6).

4

Plaintiff contends that defendants failed to comply with the Temporary Restraining Order and February 17, 2026 Preliminary Injunction Order. Plaintiff applied for another Order to Show Cause why defendants should not be compelled to comply with the Court's February 17, 2026 Order. On February 27, 2026, Judge DeMarzo agreed that defendants "have refused to comply with the [February 17, 2026] Order and continue to interfere with the businesses." (Statement of Reasons at 4, ECF 1-7). Accordingly, he entered an Order to Show Cause with Temporary Restraints dated February 27, 2026 directing defendants to appear on March 13, 2026 to show cause why they should not be compelled to immediately comply with the Court's February 17, 2026 Order, to turn over SanKav's books and records, and to provide Synergeia with access to SanKav's bank accounts, systems, vendors, employee laptops, and access to various categories of data and information. (ECF 1-7). Judge DeMarzo specifically noted that "sanctions will be discussed on the return date" of the Order to Show Cause. (*Id.*). Defendants' written response to the Order to Show Cause was due by March 5, 2026. (*Id.*). Defendants did not respond to the Order to Show Cause. Instead, they removed the case to federal court on March 5, 2026. One day after removal, plaintiff moved to remand this action to state court for lack of subject matter jurisdiction and on the basis of a procedural defect in removal.[1]

## II.    DISCUSSION

A defendant may remove a civil action filed in state court to a federal district court having original jurisdiction over the action. 28 U.S.C. § 1441(a). The district court has original jurisdiction over any civil action presenting a federal question in that plaintiff's claims arise under

---

[1] Defendants' argument that the Motion to Remand must be disregarded because it is "not supported by any proper evidence" is misplaced. (Opp. Br. at 5, ECF 8-2). In deciding the Motion to Remand, the Court "must focus on the plaintiff's complaint at the time the petition for removal was filed. . . . [and] assume as true all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

federal law, 28 U.S.C. § 1331, and actions involving citizens of different states where the amount in controversy exceeds $75,000, 28 U.S.C. § 1332(a)(1). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Defendants as the removing parties bear the burden of establishing that removal was proper. *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

Defendants rely on both 28 U.S.C. § 1331 and § 1332(a) as the bases for the assertion of federal subject matter jurisdiction over this action. (Notice of Removal ¶¶ 13-20, 23-30, ECF 1). The Court addresses federal question and diversity jurisdiction in turn.

### A.    Federal Question Jurisdiction

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Instead, "a case can 'aris[e] under' federal law in two ways. Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013); *see Merrell Dow*, 478 U.S. at 808 (noting that "the vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action"). The Supreme Court has also recognized a "slim category" of cases, *Gunn*, 568 U.S. at 258, where state law claims "nonetheless turn on substantial questions of federal law" such that federal courts may exert jurisdiction pursuant to 28 U.S.C. § 1331. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). *See Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163

(3d Cir. 2014) ("[T]his type of arising under jurisdiction similarly require[s] a determination of federal law as an essential element of the plaintiff's state law claim."). To determine if federal jurisdiction will lie over a state law claim, the Court considers whether "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. This test is conjunctive, and only where all four requirements are satisfied can the Court conclude that "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313).

Plainly, plaintiff's claims for breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, conversion, access to books and records, and an accounting do not arise under federal law. Instead, the Notice of Removal posits two bases for the assertion of federal subject matter jurisdiction over this purely state law action. First, defendants argue that the real property housing the 503B outsourcing facility at issue "is secured by a loan . . . which is guaranteed by the United States Small Business Administration" and "[t]he loan and its associated documents also state when the SBA is the holder of the Note, then the Note will be interpreted and enforced under federal law, including SBA regulations." (Notice of Removal ¶¶ 14, 17). Second, defendants argue that "the crux of the lawsuit is the data controlled by defendants which is regulated by the Food and Drug Administration . . . which forbids the transfer of the data to third parties without its approval." (*Id.* ¶ 18). According to defendants, "SBA prohibition against the assignment of shares and the transfer of confidential data regulated by the FDA is a federal question, that gives this Court Subject Matter Jurisdiction over this case under 28 U.S.C. § [1331]." (*Id.* ¶ 19).

7

In determining whether federal question jurisdiction exists, the Court considers only the allegations in plaintiff's complaint.  The complaint makes no reference to any federal law, nor does it allege that defendants violated SBA, FDA, or any other federal regulations.  Defendants have not identified any element of any of plaintiff's state law claims for breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, conversion, access to books and records, and an accounting that raises a federal issue or would require the court to interpret federal SBA or FDA regulations.  None of plaintiff's claims turn on an issue of federal law, much less a substantial issue.  To the extent SBA or FDA regulations have any relevance at all to this action, those issues arise in conjunction with defendants' declaratory judgment counterclaim or their apparent defense that federal regulations prohibited the disclosure of information about SanKav to its own Board of Directors.  Indeed, the Notice of Removal does not suggest otherwise.  However, the Supreme Court has made clear that defendants cannot manufacture federal jurisdiction via a counterclaim or an affirmative defense.  *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) ("[A] counterclaim—which appears as part of the defendant's answer, not as part of the plaintiff's complaint—cannot serve as the basis for 'arising under' jurisdiction."); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983) ("[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense.").  The Court finds no basis for federal question jurisdiction on the face of plaintiff's complaint.

### B.        Diversity Jurisdiction

"Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).  The citizenship of an individual is based on his or her

domicile, and "'the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning.'" *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)). A corporation is deemed to be a citizen of the state of its incorporation and the state where its principal place of business is located. 28 U.S.C. § 1332(c)(1); *McCollum v. State Farm Ins. Co.*, 376 F. App'x 217, 219 (3d Cir. 2010) (per curiam).

There is no dispute that both defendants are citizens of New Jersey. (Complaint ¶¶ 2-3; Notice of Removal ¶ 26). The Notice of Removal asserts that there is diversity of citizenship because plaintiff Synergia Health, Inc. is a Wyoming corporation and therefore a citizen of Wyoming. (Notice of Removal ¶ 25). Defendants omit half of the equation. While the complaint alleges that plaintiff is a Wyoming corporation, it further alleges that plaintiff's principal place of business is in New Jersey. (Complaint ¶ 1. *See also* Dasari Cert. ¶ 2, ECF 3-8). It is apparent from the face of the complaint that diversity is lacking; indeed, defendants abandoned any reliance on diversity as a basis for subject matter jurisdiction in their opposition brief and again at oral argument on this motion.

As defendants have failed to establish either federal question or diversity jurisdiction, the Court recommends that this matter be remanded to state court for lack of subject matter jurisdiction.

### C.    Forum Defendant Rule

Even if the Court did have diversity jurisdiction over this action – which it does not – remand would be warranted due to a procedural defect in removal. When federal subject matter jurisdiction is premised on diversity of citizenship, the forum defendant rule bars removal of an otherwise removable case "if any of the parties in interest properly joined and served as defendants

is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). "The forum-defendant rule is not jurisdictional and is instead a defect in removal that must be raised in a timely motion to remand." *Wells Fargo Bank, N.A. v. Dey-El*, 788 F. App'x 857, 859-60 (3d Cir. 2019) (per curiam); *Encompass Ins. Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) ("This Court has long held that the forum defendant rule is procedural rather than jurisdictional.").

Here, plaintiff timely moved to remand one day after this matter was removed from state court, arguing, among other things, that defendants' removal violates the forum defendant rule. (Motion to Remand at 5, ECF 3-1). Defendants do not dispute that they were properly joined and served prior to removal, and both were citizens of New Jersey at the time of removal. As defense counsel admitted at oral argument, the forum defendant rule bars removal of this action.

### D.    Fees and Costs

Finally, plaintiff requests an award of attorneys' fees and costs it incurred as a result of defendants' improper removal, which the Court may impose pursuant to 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "Bad faith on the part of the removing party is not a prerequisite to an award of attorneys fees, but it is a consideration." *Siebert v. Norwest Bank Mn.*, 166 F. App'x 603, 607 (3d Cir. 2006). The Court has "broad discretion and may be flexible in determining whether to require the payment of fees under section 1447(c)." *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996).

The Third Circuit has approved the imposition of fees and costs where "the assertion in the removal petition that the district court had jurisdiction was, if not frivolous, at best insubstantial."

*Id.* at 1261. That is precisely what occurred in this case. Defendants removed on the basis of diversity of citizenship, but the Notice of Removal conspicuously omitted any mention of plaintiff's principal place of business in New Jersey. Once plaintiff sought remand, defendants completely abandoned any argument that the parties are diverse. Moreover, the Notice of Removal relied on a defense and/or counterclaim as the purported basis for the assertion of federal question jurisdiction, in contravention of decades of Supreme Court precedent. In the Court's view, this is not a close call or a case where reasonable minds could differ about a complex issue of law concerning the existence of subject matter jurisdiction. There was no colorable basis for removal, and the timing of removal with respect to the events in state court strongly suggests that defendants removed the case in an effort to evade or at least delay the potential imposition of sanctions by Judge DeMarzo at the March 13, 2026 show cause hearing. If nothing else, defendants' improvident removal further demonstrates a pattern of disregard for the state court's Orders. These circumstances, taken as a whole, amply warrant an award of fees and costs to the plaintiff.

### III.     CONCLUSION

For the foregoing reasons, the Court recommends that plaintiff's Motion to Remand be **GRANTED** and plaintiff's request for an award of fees and costs be **GRANTED**. As plaintiff's fees and costs are collateral to the issue of remand, the Court recommends that the case be immediately remanded to state court and the amount of the fee award be addressed post-remand. *See Mints*, 99 F.3d at 1258 (District Court has jurisdiction to award fees and costs under § 1447(c) after case has been remanded). Accordingly, plaintiff shall not file a fee application unless and until the District Court enters an Order adopting this Report and Recommendation. The parties are advised that, pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, they have 14

11

days after being served with a copy of this Report and Recommendation to file and serve specific

written objections to the Honorable Susan D. Wigenton, U.S.D.J.

Dated: April 10, 2026

_s/ Leda Dunn Wettre_
Hon. Leda Dunn Wettre
United States Magistrate Judge

Orig:   Clerk
cc:     Honorable Susan D. Wigenton, U.S.D.J.